## Marshall, Appellant, *v.* Virden.

*Voluntary associations—By-laws—Pilots.*

A by-law of a pilot's association that "any pilot refusing to go on a boat when his turn comes, shall be considered on sick leave, and shall receive sick leave pay," is a reasonable and proper regulation.

If a pilot without leave of the association absents himself from a port, thus placing it out of his power to take his turn, he may be treated by the association as a "pilot refusing to go on a boat" within the meaning of the by-law.

Refusal to do a particular thing is as clearly evinced by acts making performance impossible as by oral expression.

Argued Dec. 11, 1901.   Appeal, No. 222, Oct. T., 1901, by plaintiff, from decree of C. P. No. 1, Phila. Co., March T., 1900, No. 1324, dismissing bill in equity, in case of Thomas R. Marshall v. John P. Virden, President, F. S. Eldridge, Treasurer, John B. Merrir, Secretary, representing themselves and others associated together under the joint title, " The Pilots' Association for the Bay and River Delaware." Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Bill in equity for an account.

BEITLER, J., found the facts to be as follows :

Marshall reached Philadelphia on Sunday, July 2, 1899, having brought up the steamship " Snowflake." He went immediately to the association's office, 319 Walnut street. This office is in the charge of two agents. They are not required to attend at the office on Sunday. They were, in fact, on that day both out of the city. One of them, Mr. Price, arrived at the office about 10:30 Monday morning, July 3. The other

agent, Mr. Williams, returned to the city Sunday evening, and was at the office the next morning at 8:30.

The plaintiff was required by Rule 22 to see that his arrival was registered. This rule is: "A register shall be kept in Philadelphia of all vessels arriving, and every pilot, immediately after his arrival in Philadelphia, shall go to the office and see that he is registered by the agent or agents, and report to the agent or agents for outward duty."

This duty the plaintiff utterly ignored. True, he went to the office; true, he could not report to the agents, for they were not there; but the association's rules did not require the agents to be there, and one of them was there at the customary time the next (Monday) morning.

On that morning, however, Marshall left on an early train for his home at Lewes, Delaware.

The privilege of going to his home is permitted to a pilot under Rule 24, which is: "Every pilot living out of Philadelphia when on outward turn, and a vessel not coming away, shall be allowed to go to his home, provided he pays the difference between his passage and his board, but the agent must first give his consent."

In fact, Marshall did not get the consent of the agent. In fact, vessels were "coming away." On Monday, pilot Shellenger took out a steamer, pilot Virden took out a steamer, and pilot Burton took out a steamer. On Tuesday, pilot Maull took out a steamer, pilot Chambers took out a steamer, pilot Joseph took out a steamer, and pilot Kelly took out a steamer. On Wednesday, pilot Bennett took out a steamer, pilot Truxton took out a steamer, pilot E. C. Marshall took out a schooner, and pilot Poynter took out a steamer.

If the plaintiff had not left the city on Monday morning he would have been appointed, in regular turn, to "outward duty" on Monday. When his turn came he was not here. It is probable that the agent knew where the plaintiff was, and it is also likely that had he telegraphed to Marshall to Lewes to come back that the plaintiff would have come on the evening train, and been on hand to take out a ship that night or Tuesday morning. The knowledge the agent had of the plaintiff's whereabouts, however, was merely what others told him, and he had no intimation from the plaintiff as to his intentions.

Rule 12 provides: "Any pilot refusing to go on a boat when his turn comes shall be considered on sick leave, and shall receive sick leave pay," and sick leave pay is $50.00 per month.

Rule 6 provides : " The pilots shall be appointed to outward bound vessels by the agent, and if any pilot shall refuse to go with a vessel he is thus appointed to he shall pay the sum of $25.00 to the agent for the use of the association."

Rule 5 provides: " Any pilot who wishes to stay ashore and not follow his business of pilot shall receive $50.00 per month in lieu of his proportionate share of earnings, but he shall not receive any pay for less than a month."

It is fair to the plaintiff to state that before he left Philadelphia he made inquiries to learn whether there were vessels in port ready to leave or nearly ready which would require the services of more pilots than were in port and intended to remain.  When he left Philadelphia for his home early Monday morning he thought that his services would not be required that day, and he also intended, if telegraphed for, to come back as soon as he could.

He received no telegram, and remained at his home.  On July 8 he received a letter from the agent, Mr. Price, dated the 7th, advising him that he had been placed on the "retired list for the month of July."

Upon receipt of that letter the plaintiff spoke to some of his brother pilots, and they drew up a petition dated July 10, to which seven attached their names, which merely requested the secretary to call a special meeting of the board of directors "to settle the case of J. R. Marshall and T. D. Fuller."  (Note. Fuller's case was heard by me with Marshall's.  The facts are identical.  Fuller went home along with Marshall and without consent, and when his turn came to take a boat he was not here.)

To this the secretary replied the next day that he had no power to call the directors together, but that the president had, and he would forward the communication to the president.  In fact, no special meeting was called.  The by-laws fix a regular meeting for the first Monday in August.

The plaintiff himself wrote to the secretary.  The letter was read to the plaintiff, but not offered in evidence.  The trial judge did not see it.  From the questions asked, however, it

appears to have been a request for the directors to meet and hear the case.

The secretary, on July 18, wrote the plaintiff: " A regular stated meeting of the Board of Directors of the Pilots' Association, Bay and River Delaware, will be held at 319 Walnut street, on Tuesday, August 1, 1899." ·

Marshall did not attend the meeting. The notice did not request that he should, nor say that he could, but he made no effort to secure a hearing by appearing.

· At the meeting the directors passed the following resolution unanimously : " That it is the sense of this Board, after hearing the cases of Thomas R. Marshall and Thomas D. Fuller, that they are entitled to receive only fifty dollars per month for month of July " (according to the by-laws).

This amount the plaintiff has refused to accept.

The plaintiff remained at Lewes—for just how long does not appear.

The pilots maintain a steam pilot boat and a relief boat. One of these makes her headquarters at Lewes. The plaintiff went on board the boat at Lewes. On this boat the pilots are " listed," that is, their turns are determined by a list on which the names appear one after another. A pilot is put on an incoming boat when it is his turn. He is assigned to an outgoing boat in the same order.

During July, the plaintiff being on the pilot boat, took his turn as " listed " in bringing a boat to this port. When he reached Philadelphia he reported to the agent and asked for a vessel down. The agent refused to give the plaintiff a vessel.

The pilots have a custom of exchanging vessels, that is, if A is assigned to a particular vessel, he will give B his turn, and when B is assigned take the vessel which is given B.

The plaintiff, being refused a boat, Mr. H. F. Virden, who had been given the "Kestor," requested plaintiff to take the " Kestor " out for him, which plaintiff agreed to do and did. The date of this service was not given. It was not with the knowledge or consent of the agent. Nor was the piloting up of a vessel with the knowledge or consent of the agent or the association. There does not appear to have been any scarcity of pilots at the time, and what the plaintiff did any other pilot could have done. The trial judge does not see how the receipt

of the money for this service estops the association in any sense from contesting plaintiff's claim for more than sick leave pay.

The pilots' association is made up of about ninety licensed pilots of New Jersey, Delaware, and Pennsylvania. The service they render to commerce is important; in fact, indispensable. Commerce is compelled to employ them. No vessel can come up or go down without a licensed pilot in charge.

The pilots' association has been in existence for about five years. During all that time this is the first instance where a member has gone to his home without the agent's consent. In many cases the agent has given such consent. In such cases, if the need for the services of a pilot, absent with leave, appears, he is telegraphed for. The plaintiff contends that he had a right to rely on this custom, and that until he refused to obey a telegram to return, the association had no right to consider him as refusing to take his turn. If he is correct then each pilot as he reaches port may, after making an honest effort to ascertain whether his services will be needed during the next twenty-four hours, go home, leaving no notice of his going with the agent and making no effort to secure the agent's consent, but imposing upon his brother members the burden of performing his work, or upon the secretary the necessity of telegraphing for him to his supposed whereabouts, with the alternative that if there are not men enough in port to take away the vessels leaving and he does not come back, the commerce of the court, for the time being, stands still.

It seems to the trial judge that the quasi-public character of this association must be taken into consideration in reading the by-laws and deciding their force and effect.

The by-laws were passed to regulate the service so as to best serve the commerce of the port. Rule 12, "Any pilot refusing to go on a boat when his turn comes shall be considered on sick leave and shall receive sick leave pay," either governs this case or it fails of its evident purpose. The plaintiff it is true, did not, when his turn came, say to the agent, "I will not take my turn," but he was many miles from Philadelphia when his turn came, in a little town with two daily trains and no Sunday trains. The fact that he was there was not known to the agent except as he had heard from other pilots that the plaintiff had said to them he was going home.

No notice of any kind had been left at the office for the agent; no letter or telegram was sent announcing a willingness to return when requested, and it seems to the trial judge that the plaintiff put himself on sick leave when he left without the agent's consent, and that his absence, unexplained, and his whereabouts unknown, except by rumor, put him in the position of "refusing to go on a boat when his turn came."

The fact that this is the first case of its kind in the history of the association it seems to the trial judge is significant. It speaks well for the discipline of the pilots as a body. It shows, too, how serious a matter all have deemed it to go away without leave. It, at the same time, leads the trial judge to suggest that the association might have dealt with the plaintiff in a way which, while it would have emphasized the need of a rigid adherence to the by-laws, would not have been so severe.

With that, however, the trial judge has nothing to do in deciding the case now before him.

Believing that the plaintiff has been tendered all that was due him under Rules 12 and 4, the trial judge finds that the bill should be dismissed with costs.

The plaintiff's requests for findings are attached hereto. I have preferred to find the facts in my own language.

The cases cited by the plaintiff I deem inapplicable. The rules referred to are fair and reasonable. They bear equally upon all. They are, in fact, of great importance to the vast public interests the association serves. They are plain, unambiguous and, in my opinion, apply to the case under consideration.

The prothonotary will give the respective counsel ten days' notice of the filing hereof. If no exceptions are filed hereto within ten days he will mark the same confirmed absolutely.

Exceptions to adjudication were dismissed by the court, and a decree entered dismissing the bill.

*Error assigned* among others was decree dismissing the bill.

*Ira J. Williams*, with him *Simpson & Brown*, for appellant.— A penal by-law must be strictly construed, and there was no refusal within the true meaning thereof: Potter v. Search, 7

Phila. 443; Franklin Beneficial Assn. v. Com., 10 Pa. 357; Philadelphia v. Costello, 17 Pa. Superior Ct. 340.

By-law 12 is unreasonable and void if applied to the facts of this case: Evans v. Phila. Club, 50 Pa. 107 (1865); Northern Liberties v. Northern Liberties Gas Co., 12 Pa. 318; Hibernia Fire Engine Co. v. Com., 93 Pa. 264; Com. v. St. Patrick Benevolent Society, 2 Binn. 441; Com. v. Cain, 5 S. & R. 512; Com. v. Woelper, 3 S. &. R. 29; Juker v. Commonwealth, 20 Pa. 484; Lynn v. Freemansburg Building & Loan Association, 117 Pa. 12.

Appellee is estopped, by the receipt and retention of appellant's earnings as well prior as subsequent to July 7, from alleging that appellant was on sick leave and is only entitled to sick leave pay: Becker v. Berlin Beneficial Society, 144 Pa. 232; City of Reading's Case, 103 Fed. Rep. 696.

*Henry Flanders,* of *Flanders & Pugh,* for appellee.

OPINION BY WILLIAM W. PORTER, January 21, 1902:

The plaintiff's rights are determinable by Rule 12 of the by-laws which provides that, "any pilot refusing to go on a boat when his turn comes shall be considered on sick leave and shall receive sick leave pay." Under this rule the defendant association was empowered to treat the plaintiff's absence from Philadelphia on Monday, when his services were required and demandable, as the next in turn, a "refusal." Refusal to do a particular thing is as clearly evinced by acts making performance impossible as by oral expression. The president and board of directors, at a regular meeting of which the plaintiff had notice, held the plaintiff bound by the by-law above quoted. The action was taken pursuant to the seventh article of the constitution referring to that body the determination of matters of dispute arising among the members.

The result to the plaintiff is a considerable loss for what might seem to be trivial transgression. But we are not willing to stamp the by-law as unreasonable and for that reason unenforceable. The plaintiff was a member of the defendant association. He participated in its organization. He assented to its by-laws. He found nothing unreasonable in the provision now complained of until he chose to violate it. Further-

more, the by-law covered a subject of no mean importance. The members of the defendant association have much to do with the commerce of the city of Philadelphia. If without severe penalty members might absent themselves at will, serious consequences might result to outgoing vessels and thus to the interests of a large community. As the learned judge of the court below says, the organization is quasi-public. Its members perform high duties with which go great responsibilities. In view of the considerations suggested, we cannot regard the penalty here imposed by virtue of the by-law so unreasonable as to set aside the by-law or to relieve from its operation. The conduct of the plaintiff in the taking out and bringing in of vessels after he was notified that he was upon " sick leave " does not help his claim. His conduct was that of a man who, though suffering in pocket for dereliction of duty, was not desirous of escaping labor (during his period of suspension) which might aid his associates in performing the work of their joint undertaking. His relation to the defendant was not that of servant to master, but that of an associate assisting and participating in a common purpose. His acts must under the circumstances be regarded as voluntary, and were, it may be, properly due from him until the action of the board of directors confirming his suspension.

The decree dismissing the bill is affirmed.